NEW-YORK,
Nov. 1810.

VOORHIS
v.
WHIPPLE and
HAWES.

---

## VOORHIS against WHIPPLE and HAWES.

THIS case came before the court, on a *certiorari*, directed to two justices of the peace.

The proceedings below were under the 16th section of the act for the settlement and relief of the poor, (24 sess. c. 184. 1 *Rev. Laws*, 571.) and are, shortly, these: One *Carril* came into the town of *Richfield*, in the county of *Otsego*, and soon after became wounded and disabled, so as to be incapable of being removed to his supposed legal place of settlement in *Charleston*, in the county of *Montgomery*, upon which the overseers of the poor of *Richfield* gave notice of these facts to *Voorhis*, one of the overseers of the poor of *Charleston*, requiring him to relieve the pauper during his illness, which he neglected and refused to do. The overseers of the poor of *Richfield* expended 334 dollars and 15 cents, in maintaining the pauper, after notice to *Voorhis*. These alle-

Under the 16th section of the act for the settlement and relief of the poor, (24 sess. c. 184.) there must be an adjudication of two justices, after examining the pauper on oath, as to the place of his last legal settlement, before they can issue any warrant against the overseers for the expenses of his maintenance. A subsequent adjudication and a confirmation on appeal, will not render a warrant previously issued, valid, but it will be quashed, on return to a certiorari.

NEW-YORK, Nov. 1810.

VOORHIS
v.
WHIPPLE and HAWES.

gations being made before two justices of the peace of *Montgomery* county, and proved to them on oath, they issued their warrant, ordering that sum to be made, by public sale of the goods and chattels of *Voorhis*.

In their return to this *certiorari*, the two justices set forth their warrant, which stated, that *Whipple* and *Hawes*, overseers of the poor of *Richfield*, complained and gave them the said justices to be informed of the facts above mentioned, " which said complaint and allegations were proved and verified by oath before them."

*Voorhis* assigned for causes of quashing the warrant of distress :

1. That no adjudication had been made that the pauper was last legally settled in *Charleston*, before he had notice to provide for him.

2. That it does not appear from the warrant, that the justices had legal evidence that the pauper's last legal place of settlement was in *Charleston*.

3. That it does not appear by the warrant, that he had any notice of the complaint made to the justices.

To this assignment the overseers of the poor of *Richfield* pleaded, that on the pauper's recovering from his wounds and sickness, so as to be capable of being removed, an order was made by two justices of the peace, in pursuance of the act, adjudging the pauper's last legal settlement to be in ·*Charleston;* which order, on appeal to the general sessions of the peace for the county of *Otsego*, was confirmed.

To this plea there was a demurrer and joinder.

*Cady*, in support of the demurrer. The 7th section of the act for the settlement and relief of the poor, provides for the removal of strangers who have no settlement, and who are likely to become chargeable ; and any two justices may cause such person to be brought before them and examined, and may direct him to remove to the place of his former settlement, and if he ne-

glects or refuses, they may issue a warrant for his removal.

The 16th section of the act provides for the case of such stranger, being so sick or lame as to be incapable of being removed. Notice of the fact is to be given to the overseers of the poor of the place of his last legal settlement, with a request to them to provide for his relief and maintenance during his illness, &c. and on their neglect and refusal, two justices of the peace of the county in which the place of such pauper's legal settlement shall be, on complaint made to them, are authorized to cause the money expended for his maintenance to be levied by distress and sale of the goods of the overseer so neglecting or refusing, &c.

The first question for the two justices to decide was, whether they had jurisdiction; for they can have no jurisdiction or authority to issue the warrant, until the place of the pauper's last legal settlement is ascertained. They have no means of making this inquiry. It is essential, therefore, that there should be an adjudication of the place of legal settlement, before the justices can proceed to act.

A mere notice to the overseers is not sufficient to protect them; and without a prior adjudication they must act at their peril.

Again, if there had been a prior adjudication, the justices would not be authorized, on a mere complaint, without any inquiry or hearing of the party, to issue their warrant to levy to any amount.

In cases of summary proceedings, where no particular mode of proceeding is prescribed by law, that mode must be pursued which is according to the principles of justice. The party should be summoned to answer the charge against him; and the witnesses in support of the charge should be examined in his presence.* Where a party has not received notice, or been summoned, the defect can be cured only by his appearance.†

* 2 Burr. 1164, 1165, 1166. 3 Burr. 1786. Str. 1240.
† Salk. 181.

NEW-YORK,
Nov. 1810.

VOORHIS
v.
WHIPPLE and
HAWES.

\* 2 Str. 261.

In the present case it is evident that the overseer did not appear; and he could not have been summoned, for the complaint was made and the warrant issued on the same day. Such a summons is not reasonable nor legal.\*

By the 5th article of the bill of rights, (10 sess. c. 1.) it is declared, that no man shall lose his freehold, goods, or chattels, unless he has been brought to answer, and has been forejudged of the same by due course of law. Here the property of the plaintiff in error has been taken from him to the amount of 334 dollars, for the few weeks maintenance of a pauper, without his having been called on to answer, or having had an opportunity to contest or disprove the justness or propriety of the charge.

† 2 East, 244.

The case of *The King* v. *Inhabitants of Great Marlow*,† shows, that the warrant and proceedings may be brought, by *certiorari*, before this court, for the purpose of being quashed.

‡ Outram v.
Morewood,  3
East, 346.

§ 2 Salk. 481,
482. 12 Mod.
419.

¶ 19 Vin. 380.
Poor, (H).
Vent. 310.
Burr. Sett. Cas.
489. 2 Bott. P.
L. 742, 743.

*Gold*, contra. 1. After the *pauper* was cured, an order of removal was made, from which there was an appeal by the overseers of the poor of *Charleston*, which was confirmed, and an adjudication made against *Charleston*. The overseers of that town are now estopped to say, that the legal settlement of the pauper is not in *Charleston*.‡ The question, therefore, as to the place of settlement, is put at rest by the adjudication of the sessions. An order of settlement, when made, binds all parties, until repealed.§

Where proceedings are brought up on a *certiorari*, the court are not confined to the record, as in the case of a writ of error, but may direct an issue to try a fact, if necessary to the attainment of justice. The order having been confirmed on appeal, is final and conclusive, unless there is error in form.¶

2. The 17th section of the act provides, that every person who thinks himself aggrieved by any judgment or warrant of the justices, may appeal to the next gene-

ral sessions. This is the proper course, and ought to have been pursued.

NEW-YORK,
Nov. 1810.

VOORHIS
v
WHIPPLE and
HAWES.

3. The warrant has been issued in precise conformity to the directions of the act. The 16th section of the act does not contemplate the interference of any magistrate, or any adjudication. It declares, that if the overseers of the poor of the town from whence the pauper came, shall, after notice to them, neglect or refuse to provide relief, two justices, on complaint to them, may issue a warrant. The object of the 16th section is to provide the means of raising the money promptly, and summarily, in so urgent a case. If an adjudication is to be first made, from which an appeal may be made to the sessions, great delay and inconvenience will arise. If the money cannot be raised immediately, the object of this section of the act will be defeated. It was intended to provide for a case of urgent necessity. It is very different from the 7th section, where no such necessity exists.

The 16th section prescribes a notice, but is silent as to any adjudication. How then could there be any appeal? The magistrates say the facts were proved to them by oath, and they issued a warrant accordingly. They could not adjudicate. They had no authority to examine the pauper.

The terms of the 16th section are as strong to authorize the issuing a warrant in this summary mode, as in several cases, which have been sanctioned by the decisions of the court.* I grant that inconveniences may sometimes arise; but it is not possible to provide a summary remedy, and yet allow all the forms of regular proceedings by notice, adjudication and appeal.

* Bennett v.
Ward, 3 Caines,
259. Bouton v.
Neilson, 3 Johns.
Rep. 474.

If these proceedings are quashed, how are the overseers of Richfield to be relieved or reimbursed?

Van Vechten, in reply. The plea admits the want of adjudication and notice. If the burden of the expense of maintaining the pauper is to be transferred from

NEW-YORK,
Nov. 1810.

VOORHIS
v.
WHIPPLE and
HAWES.

*Lichfield* to the place of his last legal settlement, it is indispensable that the place of his legal settlement should be first ascertained, before any notice is given.

Will the court subject the overseers of *Charleston* to this penalty, without any notice, or any opportunity of being heard? Perhaps, the true place of legal settlement was at *Richfield;* and shall *Charleston* be charged, in this way, with the expense of the pauper's maintenance? Is this prompt and summary remedy to be applied without first knowing what town is legally chargeable with the expense? If there is to be no previous adjudication as to the legal settlement, the warrant may be issued against the overseers of any one town as well as another.

If there had been an appeal from this warrant, and it had been set aside, could the sessions have ordered a restitution of the money? How would the overseers of *Charleston* recover back the money they might have paid?

It is said, the warrant being brought up by *certiorari,* this court may direct an issue to try whether the pauper was legally settled in the town against the overseers of which the warrant issued. But this is inverting the natural and proper course of proceeding. It is first to make the overseers of *Charleston* liable for the money, and then to inquire, whether they ought to be made liable.

The cases of *Bennett* v. *Ward,* and *Bouton* v. *Neilson,* are not analogous. There the public at large were interested in the highways; and the case necessarily required a prompt remedy. The complaint was made by a public and sworn officer, who had no interest in the case.

*Per Curiam.* The inducement to the enacting of the 16th section of the act for the settlement and relief of the poor, was to relieve the town where a pauper happened to be taken sick or lame, so as not to be able to be removed back to the place of his last legal settlement; but in providing for this summary relief to

the town actually burthened with the pauper, it pre- NEW-YORK,
supposes, that the place of his last legal settlement has Nov. 1810.
been ascertained, according to the provisions of the 7th GRAY
section, to wit, by an order of two justices, making an GOODRICH.
adjudication upon the fact, after having themselves exa-
mined the pauper on oath. To give the 16th section
any other construction, would lead to great abuse and
oppression. Towns might be charged, if the manner of
proceeding in this case is sanctioned, with the payment
of large sums of money, unjustly, and without the exa-
mination of the pauper himself, which is essentially re-
quisite to find out his last legal settlement. This not
having been done in this case, the warrant issued ille-
gally.

It has been contended, that the subsequent proceed-
ings made the warrant valid. The cases referred to
contain no such doctrine. The warrant was good or bad
when it issued; and cannot be aided by what took place
afterwards.

Warrant quashed.