UTICA,
October, 1821.

FURMAN
v.
KNAPP.

---

FURMAN and others, Commissioners of the Alms House, &c. in the city of NEW-YORK, *against* KNAPP.

*According to the true construction of the "act to lay a duty on spirituous liquors, and to regulate inns and taverns," (sess. 24. ch. 164. 1 N. R. L. 176.) a person having a license from the mayor of the city of New-York, according to the charter, and who has entered into a recognizance pursuant to the act, cannot sell spirituous liquors by retail, without being liable to the penalty imposed by the act, unless he has, also, a license for that purpose, from the commissioner of excise.*

IN ERROR, on *certiorari,* to a Justice's Court. *Furman* and others, Commissioners of the Alms House and Bridewell, in the city of *New-York,* brought an action of debt against *Knapp,* before a Justice, for the penalty of 25 dollars, under the " act to lay a duty on strong and spirituous liquors, and to regulate inns and taverns," passed the 7th of *April,* 1801. The declaration contained two counts, for two penalties, for selling, by the defendant, at different times, a half pint of spirits, at his grocery store, in the one case, to be consumed *in* the house or store of the defendant, and in the other, to be consumed *out* of his house, without having a license from the commissoner of excise. At the trial, it was proved, that the defendant had sold spirituous liquor as charged in the declaration; it was, also, proved, that at the time of such sale, the defendant had been duly licensed by the mayor of the city of *New-York,* to keep a tavern, and had duly entered into the recognizance required by law in such case; but that he had not taken out a license from the commissioner of excise. The jury found a verdict for the defendant, and being asked by the Justice whether their verdict was founded on the facts, or on the law, the jury answered, that they found for the defendant on the

law of the case. The Justice gave judgment for the de-
fendant, according to the verdict.

O. *Edwards*, for the plaintiffs in error. The offences in
this case were fully proved, and the defence set up in the
Court below rested on two grounds : 1. That the retailers
of spirituous liquors are not bound to take out a license
from the commissioner of excise ; and, 2. That if they are
bound to take out such a license in any case, they are not
obliged to do so, after taking a license from the mayor of the
city.

The ground mainly relied upon was, that by the charter
of the city of *New-York*, it is provided, " that the mayor
of the said city, for the time being, and no other person
whatsoever, shall have the power to give or grant licenses,
annually, under the public seal of the said city, to all such
persons as he shall see fit, to license them, and every of
them, to keep a tavern, inn, ordinary, or victualling house,
and to sell wine, brandy, rum, strong waters, beer, ale, or
any other sort of exciseable or strong liquors, within the
said city, by retail or the small measure," &c. And that
the legislature have no power to pass any law in violation
of the charter.

The Supreme Court of the *United States*, in the case of
the *Dartmouth College* v. *Woodward*, (4 *Wheat. Rep.* 518.)
has so fully examined the right of the legislature to inter-
fere with charters granted for municipal purposes, that it is
necessary only to refer to their decision in that case.

It was urged in the Court below, that the clause in the
constitution of this state, which declares, " that nothing
therein contained shall be construed to *annul* any charters
politic granted by the King of *Great Britain*," has placed
the charter of the city of *New-York*, beyond the control of
the legislature. But this clause was introduced by the fra-
mers of the constitution merely to save those charters from
being annihilated, as they would have been without that
clause.

Nothing more was intended than to place these corpora-
tions in the same relation, as regarded the government of
this state, in which they stood before, in regard to the *Bri-*

*tish* government ; and to leave them subject to be controlled by the legislature of the state, in the same manner as they would have been controlled before the change of government, by the King and Parliament of *Great Britain.* No good reason can be assigned why the framers of the constitution should have intended to place these corporate bodies beyond the control of the supreme legislative power. The legislature have given a different construction to the constitution, by extending the elective franchise in the city of *New-York ;* and the Council of Revision, who returned the bill with objections, did not deny the power of the legislature to pass such a law, without the application of the corporation ; but placed their objection on the ground of expediency. But, admitting that the legislature has not power to alter the charter, without the assent of the corporation, it will not be denied that it may be altered with their consent. And, although it does not appear that the corporation applied for the law in question, yet it does appear that they have not only acquiesced, but have acted under it, and have received and appropriated to their own use all the moneys collected by virtue of the law.

If the law is constitutional, it cannot be denied that all persons who sell spirituous liquors in the city of *New-York,* without a license from the commissioner of excise, are liable to the penalties imposed by the act. As there is nothing in the act devesting the mayor of the city of his right to grant licenses, that right, of course, remains.

*Wells* and *Anthon,* contra. If the act is read in connection with the special forms of conviction given by the act to reduce the several laws relating particularly to the city of *New-York* into one act, (2 *N. R. L.* 376.) it is apparent that there are two classes of persons within its provisions : first, those who sell strong and spirituous liquors, to be drank in their houses, or *Tavern Keepers ;* second, those who sell such liquors to be drank out of their houses, or *Grocers.* Though generally distinct, these two characters are sometimes united in the same person, as in the present case ; and the suit was brought against the defendant to recover the double penalty for selling such liquors as a *Tavern Keeper*

and a *Grocer*, contrary to law ; and each count in the declaration is for a distinct offence. The first count is for selling spirituous liquors to be consumed *in his house*, without having a license from the commissioner of excise. But it appeared that he had been duly licensed by the mayor, and had entered into the recognizance required by the sixth section of the act. The *second* section speaks of the cities of *New-York*, *Albany*, *Hudson*, and *Schenectady* ; and the *third* section declares, that it " shall be lawful for the commisioners of excise in the several towns of this state, annually, by writing under their respective hands and seals, and in the several cities aforesaid, annually, in the manner prescribed by their respective charters, or by any statute prescribing such manner therein, to grant to the several persons who reside in their respective cities or towns and apply for the same, a license to retail," &c. The *sixth* section declares that no person shall sell by retail, &c. in either of the said cities, unless he shall appear before the mayor, and enter into the recognizance therein required. The *seventh* section annexes the penalty to each offence, and each class of persons : it declares, that if any shall sell by retail, &c. without having such license as aforesaid, *or* if any person shall sell any strong or spirituous liquor to be drank in his or her house, &c. without having entered into such recognizance as aforesaid, every person who shall be guilty of either of the offences aforesaid, shall, for each offence, forfeit the sum of twenty-five dollars. So that there are two offences distinctly pointed out by the statute, attaching to each class of persons already mentioned : one selling liquor by retail to be drank out of the house, without having a commissioner's license, which is the offence charged in the second count ; the other, selling liquors to be consumed in the house, without having entered into the recognizance prescribed, which is the offence charged in the second count. And the forms of *convictions* given by the statute (2 *N. R. L.* 376.) for reducing the laws relative to the city of *New-York* into one statute, are adapted to these two distinct offences. Neither of the forms of conviction will suit this case, supposing the defendant has been guilty of an offence ; and as the act purports to give forms of conviction for each offence, it is fair

UTICA,
October, 1821.

FURMAN
v.
KNAPP.

to conclude, that the acts of the defendant did not amount to an offence.

But, it is contended, on the part of the plaintiffs, that the defendant, notwithstanding he had the mayor's license, and had duly entered into the recognizance prescribed, was bound also to have the commissioner's license, before he could lawfully sell spirituous liquors by retail, to be consumed in or out of his house. This leads to an examination of the important question in the cause, whether the *commissioner of excise* has any right or power to grant a license to retail strong or spirituous liquors in the city of *New-York?*

The third section of the statute already cited, declares, that the commissioners of excise, in the several cities aforesaid, shall grant licenses annually, " in the manner directed by their respective charters." Now, the charter of the city of *New-York* provides, " that the mayor of the said city for the time being, and no other whatsoever, shall have power to give and grant licenses annually, under the public seal of the said city, to all such persons as he shall think fit, to license them, and every of them, to keep a tavern, inn, ordinary, or victualling house, and to sell wine, brandy, rum, strong waters, cider, beer, ale, or any sort of exciseable or strong liquors, within the city of *New-York*, or the liberties or precincts, by retail or the small measure ; and that it shall be lawful to, and for, the said mayor of the said city, for the time being, to ask, demand, and receive, for every such license by him to be given and granted as aforesaid, such sum or sums of money, as he and the person to whom such license shall be given and granted, shall agree for, not exceeding thirty shillings for each license," &c. This power of the mayor of the city to grant these licenses under the charter, is not, evidently, taken away by the legislature ; and the mayor is, in fact, in the constant exercise of it. How, then, can the commissioners of excise grant a license " in the manner directed by the charter," when that instrument, by express words, exclusively vests the whole power in the mayor ? It is not necessary for us to inquire how far the legislature have power, without consent of the corporation of the city, to alter its charter, because, until such an

alteration has been expressly made, the powers conferred by the charter, must remain. Now, by the charter, the mayor is commissioner of excise for the city. He, " and no other person," can grant licenses for vending exciseable liquors. This power has never been resumed, or taken away, but is still exercised, and, as is admitted by the plaintiff's counsel, it may be lawfully exercised by him. How, then, does a commissioner of excise acquire a right to the co-ordinate exercise of the same power? The two things cannot co-exist. One person cannot have the *exclusive* right to do a certain thing, and another person have an *equal* right to do the same thing. Unless, therefore, it can be shown, that the *exclusive* right to grant these licenses vested by the charter, in the mayor, has been taken away by some express law, a concurrent exercise of the power cannot be supported. It is true, that the act directs a commissioner of excise for the city of *New-York*, to be appointed; but if he cannot grant licenses to retail spirituous liquors " in the manner directed by the charter," as we think we have shown, it follows, that he is without the power of exercising his office. If it had been the intention of the legislature to alter the charter of the city, in this respect, they have failed to do so, from the inconsistency and impossibility of the exercise of this power being exercised by the commissioner, in the manner pointed out. The selling of liquors by retail, therefore, by a person licensed by the mayor, and who has entered into the recognizance prescribed, without any license from the commissioner of excise, cannot be an offence.

It is not denied, that the commissioner of excise has been long in the actual and open exercise of the power of granting such licenses; but the long continuance of the usurpation does not turn it into a right. If it has been acquiesced in from misapprehension and error, it is not too late to expose and resist the pretension.

There is, moreover, a constitutional objection to the statute, to which the case of *Dartmouth College*, cited by the plaintiff's counsel, has no application; and it forms the principal grievance to the citizens of *New-York*, which has induced a resistance to the power exercised under the statute. The *fourth* section of the act declares, that it shall

UTICA,
October, 1821.

FURMAN
v.
KNAPP.

be lawful for the commissioner of excise to determine the sum which each person applying for a retail license is to pay for the same, not being less than *five* dollars, nor more than fifty dollars, as a duty of excise. The commissioner is thus created an *assessor*, with an arbitrary discretion, in this respect, over those who come within his control. The delegation of such a power to a single person, not directly responsible to the people, is dangerous, and contrary to the spirit of our free institutions; and it is a capricious exercise of the power that has led to the present controversy. This section of the act is not only hostile to the spirit of our government, but is opposed to the language of the constitution. The excise duty is a *tax;* and an *assessor* is the person who fixes the amount which each individual is to pay. The *council of appointment,* under the constitution, have no authority to appoint an *assessor* of any kind. The framers of the constitution deemed it unwise to repose the exercise of so important a power in any person over whom the people had not the immediate and direct control.

*Edwards,* in reply, said, that as to the objection that the commissioner of excise could not grant a license " in the manner directed by the charter," because that instrument vested the power exclusively in the mayor, it may be answered, that the legislature have, in the clearest and most explicit language, declared, that no person shall retail spirituous liquors, without the license of the commissioner of excise, under the penalty imposed by the act. And if, as is contended, the act is so worded, that no licenses can be granted by the commissioner of excise, and, consequently, no liquors sold by retail in the city of *New-York,* it is for the legislature, not this Court, to repeal the act. The legislature may entirely prohibit the retail of spirituous liquors; and if, by this act, they have done indirectly, what they might have done directly, there is no authority which can control them. It is not necessary to point out the manner in which licenses are to be granted. The only question for the Court to decide, is, whether the defendant, having sold spirituous liquors by retail, without having a license from the commissioner of excise, is liable to the penalty which the

law imposes. There can be no doubt of the intention of the legislature, and it is a well established rule of law, that a statute is to be so construed as to carry the intention of the legislature into effect. If an adherence to the strict, literal signification of the words, would lead to absurdity, or render a compliance with the act impracticable, the signification may be controlled and extended by the Court, so as to give effect to the intent of the legislature. The word "manner," is one of an indefinite meaning. It may well be construed to refer to the *form* and terms of the license merely, not as to its being issued by the mayor.

The first form of conviction given by the other statute, applies to both cases, for the defendant, in each case, sold liquors, without having the permit there referred to.

As to the objection, that the act is unconstitutional, because this excise is a tax, and is imposed by a person not chosen by the people, it is a sufficient answer, that the price paid for a license is no more a tax than duties on sales at auction, or on licenses to venders of lottery tickets. The legislature merely provide, that a person shall not follow a particular business, without paying a certain sum; and it is perfectly optional with any person to follow that calling or not. But a tax is an imposition from which there is no escape. The *assessors* spoken of under the constitution were officers well known under the colonial government, whose duty it was to make an estimate of the real and personal estates of the citizens, with a view to the imposition of taxes. These only are alluded to in the constitution.

SPENCER, Ch. J. delivered the opinion of the Court. The plaintiffs sued for two penalties of twenty-five dollars each, for that the defendant had sold at different times, in the tenth ward of the city of *New-York*, half a pint of spirits, at his grocery-store, to be drank in his house or store, in the one case; and in the other, to be conveyed out of his house, without having the license of the commissioner of excise.

The offences were fully proved; and it was also fully proved, that at the time of such sales, the defendant had been duly licensed by the mayor of *New-York*, and had en-

tered into the recognizance required by law, but had taken no license from the commissioner of excise. On these facts, the jury found a verdict for the defendant, and declared, on being interrogated, that they so found on the law of the case.

By the charter of *New-York*, the mayor has the exclusive power to give and grant licenses, annually, under the seal of the city, to such persons as he shall think fit, to keep a tavern, inn, ordinary, or victualling house, and to sell wine, brandy, rum, &c. and all sorts of exciseable or strong liquors, within the city, by retail or small measure; and the mayor may ask and take a sum, not exceeding thirty shillings, for each license.

The first section of the act laying a duty on strong liquors, and for regulating inns and taverns, (1 *N. R. L.* 176.) authorizes the governor, with the consent of the council of appointment, to appoint, from time to time, such person as they may think proper, in the city of *New-York*, to be the commissioner for collecting the duty of excise from the several retailers of strong and spirituous liquors in said city ; and it constitutes the supervisor and any two justices of the several towns in the state, as commissioners for collecting the duties in the several towns.

It will be seen, by a reference to the second volume of *Greenleaf's* edition of the laws, (p. 116.) that on the 1st of *March*, 1788, the very same provision was made by the legislature for the appointment, by the governor and council, of a commissioner for the collection of the duty of excise from the several retailers of strong and spirituous liquors in that city. The provision is precisely the same in both the statutes.

The third section of the present act, (1 *N. R. L.* 177.) renders it lawful for the commissioners of excise in the several towns, annually, under their hands and seals, and in the several cities, annually, in the manner directed by their respective charters, *or by any statute prescribing such manner therein*, to grant licenses to retail strong or spirituous liquors under five gallons ; and then follows a proviso, regulating licenses to retail strong or spirituous liquors for keeping a house or tavern.

The fourth section enacts, that it shall be lawful for the

commissioner of excise in the city of *New-York* to determine the sum to be paid for each license for retailing strong or spirituous liquors under five gallons, not less than five dollars, nor more than fifty dollars, as a duty of excise, and direct, the sum demanded to be paid to the commissioner before the license shall be issued ; the money thus received is to be paid to the overseers of the poor of the city, to be applied for the relief of the poor thereof.

The sixth section requires, that before any person shall sell by retail, to be drank in his house, &c. he shall enter into a recognizance as therein specified, but as to those who retail liquors not to be drank in the house, but carried elsewhere, they shall not be obliged to enter into such recognizance.

The seventh section enacts, that if any person shall sell by retail any strong or spirituous liquors, without having *such license as aforesaid;* or if any person shall sell any strong or spirituous liquors to be drank in his house, &c. without having entered into such recognizance as aforesaid, every person guilty of either of the offences, shall, for each offence, forfeit twenty-five dollars.

It has been strenuously contended by the defendant's counsel, that the act is either inoperative, from its direct violation of the charter, or is inefficient, from its incongruity ; and that, notwithstanding the statute, the license from the mayor supersedes the necessity of obtaining a license from the commissioner, and is a protection to the defendant.

It is not necessary to inquire into the reasons of requiring a double license to do the same act, because if we should not be able to assign any satisfactory reason for it, and if the inconvenience of this course should be admitted, it would not aid the argument, nor lead to any conclusion upon the present question. There can be no doubt that from the year 1788, to the present period, both the mayor and commissioner have granted their licenses, the first under the charter, and the latter under the statute. After such a lapse of time, we are bound to presume that the corporation of *New-York* gave their assent to the act. It is not necessary, therefore, to discuss or consider how far the

legislature, without the consent of the corporation, might modify and change the charter: It is sufficient, that after an acquiesence by the corporation in the act, for such a length of time, we must take it, that the charter was modified, in this particular, by their consent.

But it is said, that the act requires the excise licenses in *New-York* to be granted by the commissioner "in the manner directed by the charter;" that, therefore, it must be granted by the mayor, and that consequently it excludes the commissioner. If the act was justly liable to this construction, it would be absurd, indeed. The defendant's counsel mistake the provisions of the third section; it is thus: "that it shall be lawful for the commissioners of excise, in the several towns of this state, annually, by writing under their respective hands and seals, and in the several cities aforesaid, annually, in the manner directed by their respective charters, *or by any statute prescribing such manner therein,* to grant," &c. Now, in the preceding section, the cities of *New-York, Albany, Hudson,* and *Schenectady,* were particularly mentioned; and it is well known that, technically speaking, no charters had been granted incorporating *Hudson* and *Schenectady.* Those cities were incorporated by statutes. When, therefore, the act under consideration used the words, "*or by any statute prescribing such manner therein,*" the mode of granting such licenses, provided for by the acts of incorporation, and by that very statute, was legalized.

If the charter of the city of *New-York,* authorizing the mayor to grant licenses, was not altered by the statute, as I think it was not; and if the statute also provided for the granting of excise licenses by the commissioner, as I clearly think it did, then it follows that there was a concurrent jurisdiction, and that to entitle any person to sell or retail strong or spirituous liquors under five gallons, a license both from the mayor and commissioner was necessary.

It is very certain that the rights of the corporation are not affected by this construction; for the moneys received by the commissioner of excise go into the coffers of the corporation, for the support of their poor: this considera-

tion, too, very much strengthens the presumption, that the act was not passed in hostility to the rights of the corporation, but in furtherance of those rights. We perceive that the mayor cannot exact for his license a larger sum than thirty shillings, whilst the commissioner may exact as much as fifty dollars. This, probably, induced the legislature to adopt this mode of increasing the revenues of the city, upon a subject which they judged would bear an indirect tax; and it is not improbable, that it was considered more correct to devolve that business on a distinct officer. Whether any conflict has existed between the mayor and the commissioner, in the exercise of their respective duties, it is not material to inquire; nor whether the commissioner would not be bound to give a license to every person having one from the mayor.

It seems to me that we give full effect to the charter, by saying, that the power and authority of the mayor yet exists in full force; and we are bound to say, that the statutory provision remains unaffected by the charter, because we are bound to presume that the statute was passed with the assent of the corporation. It then turns out, that the charter requires a license from the mayor, and the statute requires a license from the commissioner also; and the only inconvenience that a retailer is subject to, is the necessity of obtaining both.