Gourley
v.
Allen.

THOMAS GOURLEY and ABEL WOOD, plaintiffs in error,
*against.*

ABRAHAM ALLEN and ARCHIBALD M'ALLISTER, defen-
dants in error.

No action lies by a physician or surgeon, against overseers of the poor, for ser-
vices in attending upon a pauper, though upon the most pressing necessity ;
these services not being done at the request of the overseers, and they not
having promised to pay.

Overseers have no right to appropriate the public moneys, &c. for the support
of the poor in any case, without a previous order of a justice or justices of
the peace.

The English and New York statutes and decisions touching the relief of
*casual poor*, considered.  Per Colden, Senator.

The New York statute and decisions on the same subject commented upon
Per Spencer, Senator.

ON error from the Supreme Court. The cause was ori-
ginally commenced November 13th, 1818, before a justice
of the peace of Washington county. In that court, Allen
& M'Allister, plaintiffs, sued Gourley & Wood, defendants,
who were both served with a summons, returnable the 20th
(then) inst. The plaintiffs in that court then declared
against the defendants, as overseers of the poor of the town
of Hebron, for fifty dollars, or under, for work and labor, as
surgeons and physicians, for a pauper, chargeable to the
town of Hebron, which the defendants had promised to pay.
Plea, the general issue.

The cause was tried the 27th of November, 1818.

Samuel Livingston, a witness for the plaintiffs, testified,
that in 1817, he was one of the overseers of the poor of the
town of Hebron, and understood from David Wheeler, the
other overseer for that year, that there was a child at the
widow Roache's, chargeable to that town ; but the witness
did not see the child. That in the spring of 1816 or 1817,
the town agreed to vendue the poor ; and the child was put
up, and bid off by one Russell Rotch, at $59 75 ; and Rotch
was to indemnify the town against the maintenance of the

child. That soon after, Rotch brought to the witness a note for £59 75, signed by David Wheeler, which the witness also signed. That, at the same time Rotch brought indentures to the witness, binding the child to Rotch. The witness signed the indentures; they were approved by two justices; but never executed by Wheeler. That, in the latter part of 1817, or the beginning of the spring of 1818, there was a child left at the house of the witness, in Hebron, he still being one of the overseers of the poor of that town, which he supposed to be the child that Rotch had bid off. The child was called Major Dutcher. That the witness paid the note, before given, as overseer.

Peter Dutcher, a witness for the plaintiffs, testified, that he knew the child. That he was hurt in the street, by a waggon running over his foot, near the plaintiffs' shop, in September, 1817. He saw the child in the plaintiffs' shop, soon after it was hurt; and they were then dressing the child's foot which was mashed by the waggon. That the plaintiffs continued to attend the child till in the winter following. That the injury took place in the village of Salem, where Rotch then lived. That Rotch had then become poor, and been on the jail limits; and he, his family and the child, suffered for want of the necessaries of life. That the child needed the assistance bestowed by the plaintiffs.

It further appeared in evidence, that soon after the child was hurt, the plaintiffs sent verbal notice of the fact to one of the Overseers of Hebron.

The plaintiffs' account was $17 18. The defendants admitted that services to that amount had been performed as charged; but denied their liability to pay all or any part.

December 1st, 1818, judgment for the plaintiffs for $17 18 damages; and $1 17, costs—$18 35.

The defendants removed the cause by certiorari to the Supreme Court, which, in October term, 1821, affirmed the judgment of the justice, upon a return of the above facts; and the defendants brought error to this court.

J. Crary, for the plaintiffs in error. The action was assumpsit against the plaintiffs in error, as overseers

of the poor. To sustain this action against overseers of the poor, a request, or an express promise on their part, must be shown in evidence. (*Everts* v. *Allen & Adams*, 12 John. Rep. 352.) The law imposes no obligation upon them, to relieve either a resident, or casual pauper, without the order of a justice, in the first case ; (id.) or the previous adjudication of two justices in the last. (*Voorhis* v. *Whipple & Hawes*, 7 John. Rep. 89. *Hull* v. *The Supervisors of Oneida*, 19 id. 259.) The office of overseer is created, and its duties prescribed, by statute. The plaintiffs in error have neither done nor omitted any thing prescribed by the act.

Again ; they were not overseers when the cause of action accrued ; and according to the established rule of law, are not liable for any neglect of their predecessors.

*S. Stevens*, contra. Although the office of overseer of the poor is created by the statute, it is far from prescribing their whole duty. This is general, to provide for and render every necessary relief to paupers. In many cases, should the overseers wait for an order of a justice, or an adjudication of justices, the death of the pauper would be the consequence. They must, then, render assistance without an order, and the town is bound to reimburse them. And if a third person relieve, on their default, he may sue them, and recover a just compensation.

The action properly lies against their successors in office. (*Todd* v. *Birdsall*, 1 Cowen's Rep. 260.)

COLDEN, Senator, (after stating the facts.) When this case was opened at our bar, few of us, I believe, considered it of any very great importance. Nor is it so, as to the amount which was originally in question. But it is a case which concerns the poor. It is therefore of great interest. It also regards the liability of public officers, who take upon themselves, almost gratuitously, very benevolent and onerous duties. On these accounts, it is no less deserving care-

ful examination, and attentive consideration, than any other case.

As the defendants in error were not employed by the plaintiffs, and as they made no express promise to pay for the services which were rendered to the pauper; if they are liable, it must be in virtue of an implied promise.

The only foundation on which an implied promise can be raised, is a *legal* obligation to perform that which is presumed to have been promised. (3 B. & P. 250, note *a.*) An implied promise is the *quasi contractus* of the civil law, which allowed it to be presumed that a party had contracted to perform that which the law exacted of him. (Poth. on Ob. pt. 4, ch. 1, s. 2.) If the overseers were, by law, bound to pay for the services which were rendered to the pauper, then the judgment in favor of the defendants in error ought to be maintained.

Were the overseers of the poor, with us, precisely in the place of parish officers in England, we should have no difficulty in deciding this case, if we choose to abide by English authority.

The cases of *Simmons* v. *Wilmot and others, church wardens and overseers of the poor of Isleworth,* (3 Esp. Rep. 91,) of *Watson* v. *Turner,* (Bull. N. P. 147,) and of *Wennall* v. *Adney,* (3 B. &. P. 247, 253,) very conclusively establish, that the church wardens and overseers of the poor would, in England, be liable in a case like that we are now considering. In the last case, Lord Alvanley, Chief Justice, says, "I have no doubt whatever, that parish officers are bound to assist where such accidents as these take place ; and that the law will so far raise an implied contract against them, as to enable any person who affords that immediate assistance which the necessity of the case usually requires, to recover against them."

But we cannot take English authorities for our guide in this case ; because the office and duties of our overseers of the poor are very different from the office and duties of the parish officers of England.

The former, as well as the latter, are created by, and derive all their powers and authority from statute. It is only

Defendants in error not employed by the plaintiffs, nor did they promise to pay

General ground of implied promises.

English cases upon the point in question

These no guide, owing to difference of statutes.

to compare our own law with the act of parliament, to see that the powers and obligations of the English parish officers, and our overseers of the poor, are not alike.

The English parish officers are appointed pursuant to the statute of the 43 Eliz. ch. 2; and their powers and duties are prescribed by the same statute. They are, from time to time, to raise, weekly or otherwise, in their respective parishes, competent sums to relieve the old, blind, lame and indigent; and they, independently of any other authority, may apply, according to their own discretion, the relief which may appear to them to be requisite; so that whatever sums they may rightfully pay or expend, they can always, as is said in *Tawney* v. *Case*, (Ld. Raym. 1013, 2 Salk. 531,) re-imburse themselves by "making a rate" on the parishioners. They can never, therefore, allege a want of power or means to afford the required relief. The law may, consequently, well raise an implied promise against them, in favor of one who shall have supplied the relief a pauper required and which the church wardens and overseers neglected or refused to afford.

But our overseers are in a very different situation. Our statute has not authorized them to levy money; nor trusted to their discretion to apply any part of that which is raised in the respective towns.

By our act, (1 R. L. 287, s. 23,) the sum requisite for maintaining the poor, is to be determined by the inhabitants in town meeting; and is to be raised in each town by the authority of the supervisors of the county.

Our overseers
can make no
appropriation
without order
of a justice.

The overseers can make no appropriation for the relief of a pauper, without an order of a justice of the peace, made in writing; and "the overseer is to make no other, or further allowance than what by the order shall be directed." (id. 287-8, s. 25.)

So cautious has our legislature been, to prevent overseers from exercising a discretion in relieving paupers, that our act (id. 289, s. 28,) provides, "that if any overseer shall relieve any poor person without such order, he shall forfeit and lose all such money and goods paid and distributed to

such poor person; nor shall any allowance be made to him for the same, in passing his accounts."

There is a provision in the English law, frequently referred to in the reports, (3 W. & M. ch. 11, s. 11, and 9 Geo. 1, ch. 7, s. 1, 2,) for what are commonly called *casual poor*; that is, paupers who are taken sick, or meet with an accident, and are not on the collection books of the overseers. These a justice may make an order to relieve, where the overseers refuse or neglect to do it.

Our statute, (1 R. L. 284, 285–6, s. 16 & 25,) makes provision for the same objects; but however urgent a case may be, the overseers can afford no relief from the public purse, without an order from a justice of the peace.

In all the cases which have heretofore been decided by the Supreme Court on this subject, these limitations of the powers of overseers of the poor have been recognized.

In the case of *Adams* v. *Supervisors of Columbia*, (8 John. 323, 326,) the Court decided that, after justices had made an order for the relief of a casual pauper, the overseers were liable to the physician who had attended him, for the sum which the order directed to be paid.

In *Everts* v. *Adams*, (12 John 352,) two justices made an order that a pauper should be furnished with medical aid, to be administered by Doctor Malcom. The defendant in error, Adams, attended, but it was not proved that he did so at the request of the overseers of the poor. The Court say, that if the overseers had paid Adams, it would have been directly in face of the order, which was, that Malcom should be employed; and they question, whether the overseers would have been allowed a payment to Adams, in passing their account. And the Court decided expressly that the overseers were not liable; because they had, in no way, sanctioned Adams' demand, or engaged to pay it; and had not in any manner employed him to perform the service. "There is no obligation," says the Court, "to pay, unless it be implied by law; and the law will create no such liability; especially as it would be directly in the face of the order." *A fortiori*, there can be no liability where there is no order.

ALBANY,
Dec. 1825

Gourley
v.
Allen.

In the case of *Hull* v. *The Supervisors of Oneida*, (19 John. 256,) Platt, J., in delivering the opinion of the Court, says, "The extraordinary expenses of a surgical operation cannot be legally imposed on the public, (although proper and necessary,) without an express previous order of the justice, on the application of the overseers ; or, at least, a subsequent ratification and sanction by the justices and overseers." And he says, (as must be said in the case we are now deciding,) "Here was no such previous order, nor any subsequent adoption of the claim. We are, therefore, constrained to say, that in rendering the service, the relator," (i. e. the physician) "must be deemed to have acted gratuitously ; or to have relied upon individual responsibility for his reward."

Conclusion
from them.

Now if the overseers had not funds at their disposal for the relief of the pauper ; if they could give him no relief without an order of a justice ; how can we say that they were under a legal obligation to pay the defendants in error ?

Possibly no justice in the county would give the order required by law, under a belief that the child, after he had been illegally and barbarously *vendued*, as it is called, and after Rotch had been paid for maintaining him, was not entitled to relief.

Had the
plaintiff in error paid the
defendants,
this must have
been out of
the pockets of
the former.

If the plaintiffs in error had paid the doctors, they must have done it out of their own pockets. This, I am persuaded, they were under no legal obligation to do ; and therefore the law raises no implied promise against them.

If the question were, what the law ought to be, humanity would seem to plead powerfully in favor of a provision for immediate relief in a case like that which we are now considering. The question, however, is not, what the law ought to be, but what it is. The legislature may have thought that doctors had as much benevolence as the rest of their species : and that no human being would stop to inquire, how he was to be paid, before he rendered the first assistance which such a casualty might require. It might have been considered, that the sympathies of our nature would afford all the succor that could be necessary, in a case of emergency, till more permanent relief might be obtained, with the precautions which the law has thought proper to pre-

scribe. But whatever may have been the motives of the legislature, it appears to me, that it has not entrusted to overseers of the poor, power to dispose of the public funds for he relief of paupers in any case; and I do not think they can be made to give such relief at their own expense; which would be the effect of suffering the defendants in error to retain the judgment which has been rendered in their favor in the court below. For it is to be recollected, that if that judgment is maintained an execution may be issued for the sum recovered, and the costs against the defendants below. And when the amount has been levied by a sale of their property, how are they to be repaid? The law has made no provision by which they can compel a re-imbursement. It is not with them as it is with the parish officers in England. They, under such circumstances, would indemnify themselves by a competent rate on the parishoners. (*Tawney's case*, 2 Salk 531.)

We are unfortunate in not having the reasons which the Supreme Court assigned, upon giving their judgment in favor of the defendants in error. For want of these, I have referred to their decisions in former cases; and I acknowledge, that I find myself incapable of reconciling them with that now before us, which I think ought to be reversed.

I have considered this case, as if the defendants below had been the overseers of the poor at the time the services were rendered. They were not so. Therefore, though the former overseers were liable, another question would be whether that liability was transferred to the plaintiffs in error, who were not in office till at a subsequent period. But if the original overseers were not responsible certainly their successors could not be. In my view of the case, therefore, it is unnecessary to give any opinion on this last point.

I am in favor of reversing the judgment of the Supreme Court.

SANFORD, Chancellor, concurred. He said he had not written an opinion in the cause; and should not go over the ground examined by Mr. Colden; but would notice one

ALBANY,
Dec. 1825.

Gourley
v.
Allen.

Overseers have no power to dispose of the public funds in any case.

The defendants below have no means to compel a reimburseme?

ALBANY,
Dec. 1825.

Gourley
v.
Allen.

Action lies against the successors of overseers of the poor for a debt due by their predecessors.

point which Mr. C. had deemed it unnecessary to discuss, As had been observed by Mr. C. the action was brought in the court below, not against those gentlemen who were overseers of Hebron, when the services in question were performed, but their successors in office. In view to this point, the court were referred, on the argument, to *Todd* v. *Birdsall*, (1 Cowen's Rep. 260;) and he admitted, with the case cited, that for a clear debt, the successors would be liable. The claim in that case was confessedly upon a promise legally binding on the predecessor. That is denied in the present case; and he thought correctly, for the reasons assigned in the opinion of Mr. Colden. *Todd* v. *Birdsall*, does not profess to determine what shall constitute the debt for which the successor is liable; and has, therefore, no application, beyond the question of parties.

The first question.

SPENCER, Senator. The first question presented is, whether the overseers of the poor of a town are liable to be prosecuted for medical services rendered to a pauper, without a previous order of a justice, directing disbursements for such a purpose? It appears, that in the year 1817, when the services were rendered, the pauper was admitted to belong to the town of Hebron; and provision was made by that town for his sustenance. The present seems, then, to present the same case, precisely, as that of *Hull* v. *The Supervisors of Oneida*, (19 John. 260,) in which it was decided, that an order for the sustenance of a pauper, was not sufficient authority to justify the extraordinary charges for amputating a leg, and other surgical attendance; and that an order for that express purpose was necessary. In that case, as in this, the services were rendered on the emergency, without any application by the overseers, and without any order of a justice; and the Supreme Court refused a mandamus to compel the supervisors to allow the account. Unless the reasons for the determination in that case are unsound it is decisive of the present; for if a county or town is not liable without such order, the officers of the town cannot be made responsible.

For myself, I consider that decision in perfect accordance with the policy of the statute which requires that, before

towns shall be charged with any expenses, they shall be authorized by a justice of the peace. Such are the positive provisions of the 28th section of the act for the relief and settlement of the poor ; and such have been the uniform and invariable decisions of the Supreme Court. The cases of *Voorhis* v. *Whipple & Hawes*, (7 John. 89,) *Everts & Allen* v. *Adams*, (12 John. 352,) *Ex parte Dow*, (1 Cowen, 205,) and *Ex parte Overseers of Gates*, (4 Cowen, 139,) all expressly decide, or recognize the principle, that a previous order is indispensable. I see no reason for overturning them ; nor any authority for repealing the statute.

The case of *Todd* v. *Birdsall*, (1 Cowen, 260,) was cited by the counsel for the defendants in error, to show that the defendants, as successors in the office of overseers of the poor, might be prosecuted for a debt contracted by their predecessors. Without assenting to the principle of that decision, which considers those officers a corporation, or *quasi* a corporation, it is sufficient to observe, that it is not applicable here, as the predecessors of these defendants never did contract this debt ; and they were never legally liable to pay it, if the previous order of a justice was necessary.

I confess my surprise, that the decision of the justice was affirmed by the Supreme Court ; and as we have not been furnished with the reasons of that judgment, I have been at a loss to discover them.

In my opinion, the judgment of the Supreme Court should be wholly reversed.

For the reasons given by Colden, Senator, Sanford, Chancellor, and Spencer, Senator.

*Per totam Curiam,*

ALBANY
Dec. 1825

Gourley
v.
Allen

The second question as to parties.