[No. 5837.]

BOWES, EXECUTOR, v. CANNON ET AL.

1.  **Trusts—Definition—**In its technical sense, a trust is the right, enforcible only in equity, to the beneficial enjoyment of property, the legal title of which is in another.

In its more comprehensive sense, it embraces every bai'-ment, every transaction between principal and agent, or factor, every deposit, and indeed, every matter in which trust or confidence is reposed.—(266)

2.  **Statute of Limitations—What Trusts are Within—**Whenever the subject-matter of a trust is such that the right of the beneficiary may be asserted in the courts of common law, the statute of limitations (Mills' Stats., secs. 2900, 2909, 2910; Rev. Stats., secs. 4061, 4070, 4071) may be insisted on as a bar, even though equity would have concurrent jurisdiction, and though in the particular case relief is sought in equity; otherwise where the jurisdiction of equity is exclusive.—(266, 267)

Negotiable bonds, in defendant's possession, to be delivered to the plaintiff, were, it was alleged, converted by defendant. Held, that as an action at law therefor might have been maintained, the statute of limitations was a good plea to an equitable action to enforce the trust.—(265-267)

3.  ——**When the Action Accrues—**Where a demand is necessary, before the institution of an action, the statute does not begin its course until demand is made. The defendant, named

as trustee in the mortgage of a corporation executed to secure a series of bonds, covenanted therein to certify the bonds, and deliver them to the corporation mortgagor, "or to its order." The mortgagor directed the trustee to hold certain of the bonds for one Simpson, plaintiff's intestate, and deliver the same to him "or to his order." Held, that the order, when accepted by the trustee, constituted a continuing executory contract, indefinite as to its term; that it was not terminated until delivery made according to the terms of the order; or demanded, or until some tortious act committed by the defendant, inconsistent with the right of the beneficial owner, and terminating the defendant's right in the bonds; that the delivery of the bonds to one who unlawfully assumed to be the agent of Simpson, was not a denial of the right of Simpson, nor an assertion of title to the bonds, by the trustee; that the trustee might still have followed and retaken the bonds, and that as Simpson then made no demand, and did nothing to terminate the contract, it still subsisted, and the cause of action did not accrue until demand was subsequently made by the executor.—(261-269)

4. Evidence — Admissions in Pleading Afterwards Withdrawn—An allegation in a verified pleading, which is omitted therefrom, as subsequently amended, is admissible as evidence against the pleader, though not conclusive, and may be considered by the court without being formally tendered in evidence. —(268)

*Error to Boulder District Court* — Hon. CHRISTIAN A. BENNETT, Judge.

Messrs. MILLER, BARND & AFFOLTER, Mr. H. M. MINOR and Mr. ERNEST L. WILLIAMS for plaintiff in in error.

Messrs. GOUDY & TWITCHELL for defendants in in error.

MR. JUSTICE WHITE delivered the opinion of the court:

This suit was commenced October 28, 1902. As to certain defendants, the case was discontinued, and the only ones now remaining are the International Trust Company and John Carruthers, in his capacity as one of the executors of the last will of

James Simpson, deceased. Carruthers is only a nominal defendant, made so by reason of his refusal to join with his co-executor as plaintiff. He made no appearance in the cause, and no reference will hereinafter be made to him.

From the complaint,.as amended, and the replication. to the answer, it appears, *inter alia,* that on July 1, 1892, the United Coal Company, a corporation, executed its 500 first mortgage, seven per cent., coupon bonds, of the par value of $1,000.00 each, payable on July 1, 1912, or, at its option, on or after July 1, 1897. At the same time the coal company, to secure the payment of said bonds, executed and delivered a trust deed conveying all of its property to defendant in error, the International Trust Company, as trustee. Each bond was conditioned therein, and in the trust deed, that it should "not become valid or obligatory for any purpose until it shall be authenticated by the certificate of the International Trust Company hereon endorsed." The deed of trust provided, *inter alia,* that the bonds should be delivered to the trustee, who should certify the same to an amount not exceeding 500 bonds, and "shall deliver the same, so certified, to the coal company or to its order * * * and the trustee shall be in no respect liable or answerable for the use of said bonds, or either of them, after the certification of said bonds and the delivery or return of the same as aforesaid." The bonds were delivered to, and certified by, the International Trust Company in 1892. Forty-four of said bonds belonged to, and were owned by, James Simpson. August 26, 1892, the United Coal Company, in writing, instructed the International Trust Company as follows: "Upon the delivery to you of the bonds of the United Coal Company, and after endorsement by you, you will please hold for James Simpson and deliver to him

or to his order, forty-four (44) of said bonds — *i. e.*, bonds amounting to forty-four thousand dollars.''

James Simpson died January 23, 1896, leaving a will executed the previous day, by which he gave and bequeathed to his wife ''my bonds of the president, directors and company of the United Coal Company of Denver.'' Plaintiff in error, as the duly qualified executor of said will, on the 16th day of July, A. D. 1900, made demand on the International Trust Company for the forty-four bonds covered by the hereinbefore designated order, which demand, it is alleged, was refused, and the International Trust Company converted the bonds to its own use, ''and neglected and refused to comply with and perform the duties and obligations imposed upon it, which it promised to do at the time it received said bonds,'' by which means the bonds and the value thereof, in the sum of $44,000.00, were wholly lost, ''and the plaintiff has been damaged thereby'' in such sum, together with the interest accrued upon said bonds, for which, and other proper relief, judgment is prayed.

The defendant admitted the reception, certification and holding of the bonds as alleged, the direction to hold and deliver to James Simpson or order, denied the value of the bonds, and pleaded, among other things, the six-year statute of limitations, and the delivery of the bonds in 1892 to J. H. Simpson, the authorized agent and attorney in fact of James Simpson, and with the latter's full knowledge, consent and ratification. At the close of plaintiff's case the defendant moved for judgment of nonsuit on the ground of insufficiency of evidence, and the statute of limitations, which was sustained and judgment entered accordingly. To reverse that judgment this suit is prosecuted.

After a careful inspection and consideration of

the record, we are clearly of the opinion that the evidence on behalf of plaintiff was sufficient to support a judgment in his favor, if one had been entered, unless the cause of action be barred by the statute of limitations.

Counsel on either side discuss at considerable length the distinction between trusts which are, and those which are not, within the statute of limitations. In its technical sense, a trust is the right, enforcible solely in equity, to the beneficial enjoyment of property, the legal title of which is vested in another. It implies the separate co-existence of the legal and the equitable title. In a sense, the perfect ownership is segregated into its constituent parts with the legal title and the equitable vested in different persons at the same time.—Bispham's Principles of Equity (6th ed.), page 52, paragraph 49. In its more comprehensive sense it embraces every bailment, every transaction by an agent or factor, every deposit, and, indeed, every matter in which the slightest trust or confidence is reposed. Certain causes of action, though under the comprehensive rule they be trusts, and, in a sense, equitable, are, nevertheless, brought within the operation of the statute of limitations.—Secs. 2900, 2909, Mills' Ann. Stats. It is only those causes of action of which a court of equity has peculiar and exclusive jurisdiction, and which are not cognizable in the courts of common law, that are excluded from its operation.—Sec. 2910, Mills' Ann. Stats. Whenever the subject-matter of a trust is such that it could have been sued for in the common-law courts, the statute of limitations may be insisted on as a bar, although the remedy in the particular case is pursued in equity. But if the subject-matter of a trust is such that the courts of common law would not have had jurisdiction thereof, but the matter is pe-

culiarly and exclusively the subject of equity juris-
diction, it is not within the operation of the statute.
That is, if the nature of the cause of.action, whether
it have the characteristics of a trust, or is lacking in
that respect, is such that there is a concurrent rem-
edy at law and in equity, it matters not in what
form relief is sought, the statute of limitations may
be applied, but if the cause be cognizable only in a
court of equity, it cannot be affected by the statute.
Such is the effect of the several statutory provi-
sions, and likewise the adjudicated cases.—*Murray
v. Coster*, 20 John. 575; *Kane v. Bloodgood*, 7 John.
89.

Under the circumstances of this case, the trust
and confidence reposed by Simpson in the trustee
were probably sufficient to give jurisdiction to a
court of equity; yet it is nevertheless certain, that
plaintiff could have sued at law, and the jurisdiction
in equity was not exclusive.—*Colburn v. Riley*, 11
Col. App. 184. Therefore, it was proper to plead
the statute of limitations, and if the cause of action
accrued more than six years prior to the institution
of this suit, the cause is barred thereby.—*C. F. & I.
Co. v. Chappell*, 12 Col. App. 385, 394; *Dunne v.
Stotesbury*, 16 Colo. 89.

Defendant contends that the cause of action ac-
crued to plaintiff immediately upon the delivery of
the bonds by the trust company to one unauthor-
ized to receive them, though plaintiff had made no
demand therefor, and had no knowledge of the de-
livery.

It is not certain there was sufficient evidence be-
fore the court when the motion for a nonsuit was
sustained, to establish the delivery of the bonds to
John H. Simpson by the trust company in 1892.
The original complaint charges, upon information
and belief of plaintiff, that the trust company, on

the 19th day of December, 1892, without authority or right, and without the knowledge or consent of James Simpson, and while he was absent from the United States on a visit to England, permitted James Cannon, Jr., H. C. Brooks and John H. Simpson to withdraw the bonds from the trust company, to the damage of the plaintiff in the sum of $44,-000.00. No such allegation appears in the amended complaint upon which the cause was heard. However, as admissions made in a verified pleading, and afterwards omitted from the pleading as amended, though not conclusive against the party making them, are, nevertheless, admissible as evidence in the case, and may be considered by the court, without being formally tendered as such, we will assume that the record discloses that the delivery of the bonds was made as alleged in the original complaint.—*Burris v. Anderson,* 27 Colo. 506, 510; *Barton v. Laws,* 4 Col. App. 212, 216.

The language of the deed of trust, to the effect that the trust company shall deliver the bonds so certified to the coal company or to its order, coupled with the language of the order given by the latter to, and accepted by, the former, "to hold for James Simpson and deliver to him, or to his order, forty-four (44) of said bonds," constituted a continuing and executory contract, indefinite as to its term. The contract was not complete or ended until a redelivery was made or demanded, or, at least, a tortious act committed by the trust company inconsistent with the ownership of Simpson and severing the former's right in the property. The delivery of the bonds to a person unlawfully assuming to be the agent of the real owner, in no sense dispossessed the trust company of its possessory interest in the bonds. It was not a denial of Simp-

son's ownership, nor was it the assertion of an ownership in itself. The right of the trust company to follow and retake the bonds was not thereby surrendered. The delivery of the bonds to the alleged agent of Simpson was an act inconsistent with the relation existing between Simpson and the trust company, and Simpson could have treated the contract as ended and maintained a proper suit against the trust company, or, by terminating the contract, pursued an appropriate remedy against the unauthorized holder; yet, as the trust company still had the right of possession in the property, and could have re-possessed itself thereof, and Simpson did nothing to terminate the contract, it still existed. Simpson did not, then, elect to terminate the contract, and its executory character continued until demand for compliance with its terms.—25 Cyc. 1094, 1095. Unquestionably, Simpson had a right to sue for the breach of the contract, but that cause of action did not accrue until a demand, which was within six years prior to the commencement of this suit. The statute of limitations does not run against a cause of action until the cause has accrued, and where a demand is necessary before an action can be commenced, the statute does not begin to run until after the demand. Under our code there is but one form of action, and a statement of the facts in any case is all that is necessary. The complaint, in the case at bar, is sufficient to constitute a cause of action for breach of contract, as well as conversion of property.

*Ganley v. Troy City National Bank,* 98 N. Y. 487, is a case where Margaret Ganley, plaintiff's intestate, left with defendant for safe keeping two United States 7-30 treasury notes of $500.00 each, to be delivered on surrender of a receipt therefor,

given by the latter to the former on the 3rd of April, 1865. The notes matured August 15, 1866, when they ceased to draw interest. On the day of maturity, the husband of Margaret Ganley requested the defendant to sell the notes and pay the proceeds to him, which was done on the 17th. There was no evidence that Margaret Ganley had any knowledge of the sale of the notes and payment of their proceeds to her husband. In 1879 the receipt above mentioned was found, and Thomas Ganley, as administrator of Margaret's estate, on July 31, 1879, presented and offered to surrender the receipt to the defendant, and demanded the bank notes described. He thereupon, August 7, 1879, brought suit for a breach of the contract. Among other defenses, was that of the statute of limitations. Upon these facts the court, on page 494 of the opinion, says:

"By the terms of this contract, the defendant was bound to keep these treasury notes safe for Mrs. Ganley, and to deliver them up to her upon her demand, on the surrender of the receipt which was given to her. She could not put the defendant in default upon this contract until a demand and an offer to surrender the receipt, and until that time her cause of action did not accrue. In such a case, a tort feasor cannot allege his own wrong for the purpose of defeating an action upon the contract. * * * In this case, the contract was not completely broken until the demand. The defendant was to safely keep and to deliver the notes upon demand and surrender of the receipt, and there could be no complete breach of this contract until a demand and an offer to deliver the receipt and refusal to surrender the notes."

In *Lightfoot v. Davis*, 198 N. Y. 261, 268, it is declared that, "though a party may have lost one

remedy by lapse of time, it is entirely possible that others may be open to him," and, in support thereof, *Ganley v. Troy City National Bank, supra,* is cited and quoted from at great length.

To the same effect is 25 Cyc. 999, where it is said: "As a general rule, where a party has two remedies for the enforcement of a right, the one he chooses is not barred by the statute of limitations, merely because the other, if he had resorted to it, would have been."

*Wilkinson v. Verity,* 6 L. R. 206, is a case where goods were bailed by the plaintiffs to the defendant for safe custody. The defendant wrongfully sold them, and plaintiffs, more than six years after the date of the sale, being ignorant of the fact of its having taken place, demanded the return of the goods, with which the defendant failed to comply. "Held, in an action of detinue for the goods, that the statute of limitations ran from the date of the demand and refusal, and not from that of the sale, inasmuch as the plaintiffs, in such a case, though entitled, if they had discovered the sale, to sue immediately for a conversion of the goods, were also entitled to elect to sue upon the breach of the bailee's duty in the ordinary course by the refusal to deliver up on request." In that case, it is further said: "The rule that a cause of action arises once for all upon the first default is, however, not universal; for, in cases where a man undertakes to do an act upon a future day, and before the day arrives disables himself from performing the act, or positively and absolutely refuses to be bound by or perform his contract, and, so to speak, declares off the bargain himself, and absolves the opposite party, it is in the option of such party, at his election, to treat that conduct as of itself a violation and breach of

the contract, or to insist upon holding the repudiating party liable, and sue him for nonperformance when the day arrives. The misconduct of the party who acts in fraud of the bargain in such cases gives the other party thereto the election of suing either for the first violation or for nonperformance at the day; and it does not furnish the wrongdoer with any answer to the latter.''

And, further, in the same case: ''If the action of detinue is resorted to, as it may be, * * * for the purpose of asserting against a person intrusted for safe custody a breach of his duty as bailee, by detention after demand, independent of any other act of conversion, such as would make him liable in an action of trover, it should seem that the owner is entitled to sue, at election, either for a wrongful parting with the property (if he discovers and can prove it), or to wait until there is a breach of the bailee's duty in the ordinary course by refusal to deliver up on request; and that, in the latter case, it is no answer for the bailee to say that he has, by his own misconduct, incapacitated himself from complying with the lawful demand of the bailor.''

Whether, under the peculiar circumstances of this case, an action for conversion was barred, at the time of the institution of this suit, we do not determine, as a cause of action was stated, and clearly existed for the breach of contract. The court should have overruled defendant's motion for nonsuit, and heard the cause on its merits. The judgment is, therefore, reversed, and the cause remanded for trial.                                   *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.

Decided January 3, 1911; rehearing denied June 5, 1911.