No. 14,187.

ESTATE OF SCHWARTZ.
SCHWARTZ, ADMINISTRATOR *v.* SILVEY.
(73 P. [2d] 994)

Decided November 8, 1937. Rehearing denied November 29, 1937.

Messrs. BLOUNT & SILVERSTEIN, for plaintiff in error.

Mr. EARLE F. WINGREN, Mr. WILLIAM H. SCOFIELD, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THIS cause is here on writ of error to the district court of the City and County of Denver to review a judgment of that court allowing a claim as of the fifth class in favor of Leta M. Silvey, against the estate of Max Schwartz, deceased. The claim is for the value of certain diamonds alleged to have been the subject of a bailment by Mrs. Silvey to the deceased, Max Schwartz, during his lifetime. The assignments of error raise the questions of the sufficiency of the evidence to support the claim, the statute of limitations, and laches. In establishing such a claim three elements are involved: (a) Was there a bailment? (b) Was the subject of the bailment returned? (c) If the first proposition be determined in the affirmative and the

second in the negative, what was the value of the subject of the bailment?

The evidence in support of the claim was substantially as follows: For a number of years prior to 1927 Mrs. Silvey had operated various hotels belonging to the deceased and had been rather closely associated with him in a business way in these operations; that in 1927 she was operating a hotel in Denver known as the Belvedere; that Mr. Schwartz was frequently at this hotel; that he often took the monies, received in the course of its operation, to the bank and that he and Mrs. Silvey counseled together frequently. A witness, Rita M. Stanley, testified in effect that she was employed as clerk at the Belvedere Hotel; that in October of 1927 she was working on the desk at the hotel and that Mrs. Silvey was preparing to go down town to keep an appointment; that Mr. Schwartz came in and met her at the desk; that he stated to her in substance: ''I have told you repeatedly not to wear those stones; somebody is going to knock you in the head. * * * I will take them and take care of them.'' She further testified that thereupon Mrs. Silvey took off her earrings, a solitaire diamond and another ring with two diamonds and two sapphires and gave them to him, stating, ''I want a receipt.'' Thereupon Schwartz picked up a slip of blue paper and wrote something on it. Witness then was shown Exhibit A, and testified that that was the paper, and that the writing on the face of it was placed there at the time by Mr. Schwartz. It is substantially as follows: ''10/5/27 Rec'd of Mrs. Silvey 2 earrings aggreweigt [weight] about 2 carat 1 S. S. dia ring about 2 carat 1 (5) stone ring 2 blue and 3 small dia—M. Schwartz.'' The witness further testified that a few days later Mr. Schwartz came into the hotel and requested that Mrs. Silvey give him the rest of her diamonds; that on this occasion she stated to him that she would not have time to get them, that they were locked in her trunk; that two or three days after this second conversation she was called down to the desk by Mrs. Silvey and while there

saw Mrs. Silvey deliver some other jewels to Mr. Schwartz which he placed in a long paper envelope and that Mrs. Silvey stated on this occasion that she wanted a receipt and requested that he put it on the one paper. Mr. Schwartz thereupon wrote on the back of the blue paper, Exhibit A, as follows: "Memo 1 Lav. 1 ring 1000, 1 bracelet 204, 3 ss rings 1000, 2 earrings 1 (5) stone ring, 1 ss ring 500.00. I have a five stone ring 3 diam 2 blue stones." This writing appears on the back of Exhibit A, which was admitted in evidence without objection on the part of the administrator.

Witness Schwab was called as an expert by Mrs. Silvey to prove the value of the diamonds. This witness stated that Mr. Schwartz in October, 1927, at the Belvedere Hotel, showed him the jewelry which he had received from Mrs. Silvey, with the exception of the bracelet listed on the back of the exhibit which he did not see; that he made an examination of the diamonds with a magnifying glass which he carried. He described the diamonds which he examined and testified as to their value. Another witness, Lowenheim, who was in the jewelry and loan business and whose qualifications as an expert were not questioned, from the description of the stones given by Mr. Schwab testified as to their value. Mrs. Zenia Smith testified that she had known Mrs. Silvey for fifteen or sixteen years and had been her close friend; that she had on occasions borrowed money from her; that in 1934 she was on a deal with Mr. Schwartz to buy a hotel on California street; that she did not have sufficient money to close the transaction, but that she told Mr. Schwartz that she had a friend who had some diamonds who, she believed, would be willing to let her borrow them to secure a payment of $4,000; that the friend to whom she referred was Mrs. Silvey; that she went to see Mrs. Silvey and later she and Mr. Schwartz and Mrs. Silvey had a conference regarding the deal, at which time she learned through the statements of Mr. Schwartz that he had Mrs. Silvey's jewelry in his custody; that the deal for the hotel did not go through

because she could not agree with Mr. Schwartz concerning the lease on the property. It was stipulated that demand was made on the administrator for the return of the jewelry on October 15, 1936.

The foregoing was in substance the evidence offered by Mrs. Silvey in support of her claim.

Martyn Schwartz, aged 29, son of the deceased, and the administrator of the estate, testified that he had been associated in business with his father for about eight years; that his father was engaged in the business, among other things, of lending money on jewelry; that he had access to his father's safe and to his deposit box in the bank, and that neither before nor since his father's death had he ever seen any of the jewelry claimed by Mrs. Silvey. Witness Hayutin, testifying for the defense, stated that he had known Mrs. Silvey for five or six years; that through the industrial bank, which he operated during the years 1928, 1929 and 1930, he made four loans to her in varying amounts, the largest being $375, secured by a mortgage on her furniture, all of which she paid; that in the latter part of 1933, Mrs. Silvey on several occasions requested a loan on an insurance policy and some notes, which he declined to make. This witness also testified that Mrs. Silvey was "mad" at Mr. Schwartz around 1930 and 1931, and that they were not on speaking terms.

After hearing all the testimony the trial court found in favor of the claimant and fixed the value of the property, exclusive of the bracelet, concerning which there was no testimony, at $5,150, which finding as to value is supported by the evidence.

We are aware that not only this court but other appellate courts under varying situations arising in different cases have called attention to the fact that testimony as to statements and admissions of a person since deceased is to be scrutinized with great care. Our attention has not been called, however, to any cases in which it has been held that such testimony is not competent, or that it may not be considered by the trier of facts and such

weight given to it as the circumstances of the particular case may warrant. We cannot say, under the circumstances of this case, that the testimony of Mrs. Stanley and Mrs. Smith, fortified as it was by the writing Exhibit A, signed by the deceased, was not entitled to any consideration. The weight to be given it was for the trial court who heard the testimony, saw the witnesses, and who, we must assume, was familiar with the rule that testimony based upon recollection, and interpretation placed upon statements and admissions of a person subsequently deceased is to be scrutinized with care. The findings of the trial court being supported by competent evidence we are not at liberty to disregard them nor to substitute therefor findings of our own.

■ We cannot agree with the contention of the administrator that the statute of limitations began to run when the bailment was made. As was pointed out by the trial court in his comments on the evidence, Mrs. Smith's testimony, if the court believed it, and his judgment indicates that he did, was a complete answer to the defense of the statute of limitations, for her testimony disclosed that in 1934, at a time well without the statute of limitations, the statements of Mr. Schwartz indicated that he considered that the relationship of bailor and bailee, as between himself and Mrs. Silvey, still existed. The testimony of Mrs. Smith in this connection is as follows: "He [Mr. Schwartz] asked her, 'Are you willing for Mrs. Smith to have these diamonds, to put them up and have her to pay me back the money so your diamonds will be free?' and she said, 'Yes.' He said, 'Remember, you are not running the hotel, Mrs. Smith is running it.' She says, 'I have a lot of confidence in Mrs. Smith.' " Under the facts before us we think the statute of limitations did not begin to run until demand was made upon the administrator for the return of the diamonds and their return refused. *Bowes, exec. v. Cannon*, 50 Colo. 262, 116 Pac. 336, *Dutton Hotel Co. v. Fitzpatrick*, 69 Colo. 229, 193 Pac. 549.

■ The trial judge by his judgment necessarily found

that there was a bailment. He commented on the fact that the evidence disclosed the continued existence of the relationship of bailor and bailee and a recognition of that relationship by the deceased within approximately two years prior to demand for return of the bailed articles. A claim against the estate was filed very shortly after demand was made. We think the defense based on alleged laches of claimant was not sustained by the evidence.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.