In the Matter of the **ESTATE OF** Marie Michele **KROTIUK**, protected person,

**Ross Kuzmych, Appellant,**

v.

**Odarka Figlus, conservator, Appellee.**

No. 99CA0035.

Colorado Court of Appeals, Div. V.

Feb. 17, 2000.

As Modified on Denial of Rehearing May 11, 2000.

Certiorari Denied Nov. 14, 2000.

Thomas J. Young, Jr., Denver, Colorado, for Plaintiff–Appellant

McClure & Eggleston, LLC., Ann C. Rice, Peter M. Eggleston, Denver, Colorado, for Defendant–Appellee

Opinion by Judge ROTHENBERG.

In this action against the estate of Marie M. Krotiuk, a protected person, claimant Ross Kuzmych appeals a summary judgment dismissing his claim. We affirm.

Krotiuk is a 94 year old widow who is completely incapacitated. She and the claimant are Ukrainian immigrants, and for many years, their families were business and social friends in the area's tight-knit Ukrainian community.

Krotiuk and her husband acquired a considerable amount of real estate, and after the husband's death in 1980, claimant and his realty company took over the management of the properties. According to Odarka Figlus, conservator of the estate, the realty company was paid for these services. Between 1980 and 1991, claimant also assisted Krotiuk with personal as well as business matters.

In late 1990, Krotiuk's mental health began to deteriorate due to Alzheimer's disease. She became increasingly confused and had difficulty conducting her affairs. By 1991, claimant had become a signatory on her checking account and safe deposit box. He also took over the receipt of her income and payment of her obligations.

Other members of the Ukrainian community became concerned about claimant's management of Krotiuk's financial affairs, and in October 1991, Krotiuk authorized the filing of an action on her behalf against claimant, claimant's now deceased wife, and claimant's realty company. In the 1991 lawsuit, Krotiuk sought to recover her interest in two limited partnerships, valued at approximately $180,000, that had been conveyed to claimant's wife.

Claimant defended that action by asserting that the partnership interests had been conveyed to his wife as payment for personal services he had provided to Krotiuk from 1980–1991, when he was managing her affairs. However, he did not assert a counterclaim seeking payment for these personal services.

After a bench trial, the court found in favor of Krotiuk and ordered claimant to reconvey the partnership interests. The court found that "there was no consideration given for the bills of sale and that they were prepared by and signed at the request of [claimant] at a time when he had a confidential relationship with [Krotiuk] and when she was confused and completely dependent on him." It also found the transfer of the partnership interests to claimant's wife was an abuse of claimant's confidential relationship with Krotiuk.

A few months after the 1991 lawsuit concluded, Krotiuk was declared to be a protected person. Guardians and a conservator were appointed for her estate.

In 1997, claimant filed a claim in the estate consisting of two parts. First, he asserted an entitlement to payment for personal services allegedly rendered during the eleven years between the death of Krotiuk's husband in 1980 and the 1991 trial. Second,

claimant demanded the return of four Ukrainian rugs he claimed had been loaned to Krotiuk around 1970, or alternatively, payment of the value of the rugs.

The conservator disallowed the claim, and claimant initiated this action by filing a Petition for Determination of Claim. The estate later filed two separate motions for partial summary judgment, and both were granted. The trial court ruled that the portion of the claim seeking payment for services allegedly rendered to the estate was a compulsory counterclaim in the 1991 action involving the parties, and that it was barred because claimant had not pled it in the earlier action.

As to the second portion of the claim in which claimant demanded the return of the rugs or their value, the trial court ruled that it was barred by the statute of limitations.

### I.

Claimant contends the trial court erred in ruling that his claim requesting payment for personal services was barred because it should have been raised as a compulsory counterclaim in the 1991 action. We disagree.

■ Summary judgment should be granted only if there is no genuine issue as to any material fact. The burden of demonstrating the absence of any such issue is on the moving party. Appellate review of a summary judgment is *de novo*. *Westerman v. Rogers*, 1 P.3d 228 (Colo.App.1999).

C.R.C.P. 13(a) provides in relevant part that:

A pleading shall state as a counterclaim any claim which *at the time of filing the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. (emphasis added)

■ The failure to plead a claim properly classified as a compulsory counterclaim bars any later action on the claim. *Beathune v.*

*Cain*, 30 Colo.App. 321, 494 P.2d 603 (1971). The policy behind the rule is to avoid multiple lawsuits between the parties to a transaction or occurrence.

### A.

■ Generally, a counterclaim is compulsory if it arises out of the same transaction or occurrence as the opposing party's claim. The accepted method for determining whether a claim arises out of the same transaction or occurrence as the first claim is the logical relationship test: whether the subject matter of the counterclaim is logically related to the subject matter of the initial claim. *See Visual Factor, Inc. v. Sinclair*, 166 Colo. 22, 441 P.2d 643 (1968) (citing federal cases using a "logical relationship" test to determine if a counterclaim is compulsory); *Beathune v. Cain, supra* (a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts).

■ Claimant's action for payment of personal services is an action on account which accrued at the time the last item of goods or services was provided by claimant to Krotiuk. Section 13–80–108(5), C.R.S.1999. Claimant concedes that he had provided all of the services before he filed his answer in the 1991 action.

The essence of Krotiuk's 1991 case was her contention that claimant had stolen the partnership interests from her, that claimant and his wife had no entitlement to those interests, and that reconveyance of the partnership interests was required. Claimant's defense was that he was entitled to the payment by virtue of his 11 years of personal services to Krotiuk. In the opening brief he filed in this court, he admits that his claim in the 1991 case "arose out of the provisions of services to Mrs. Krotiuk and her agreement to pay for those services," and that he previously had a claim against Krotiuk which "was revived by the trial court's ruling reversing the transactions...."

Accordingly, we conclude the claim for payment was logically related to Krotiuk's 1991 cause of action for return of her part-

nership interests and arose out of the same transaction or occurrence. *See Visual Factor, Inc. v. Sinclair, supra; Beathune v. Cain, supra.*

### B.

There are four express exceptions to the compulsory counterclaim rule. The one relied on by claimant basically states that a party need not assert a counterclaim if it has not matured at the time of the pleading, even if it arises from the same transaction or occurrence. C.R.C.P. 13(a). *See* 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1411 (1990)(construing similar language in F.R.C.P. 13(a)); *Jupiter Aluminum Corp. v. Home Insurance Co.,* 181 F.R.D. 605 (N.D.Ill.1998).

The Colorado rule is almost identical to F.R.C.P. 13(a). If, as here, there is no controlling Colorado authority, we may look to federal precedent for guidance in construing the language of the Colorado rule. *See Visual Factor, Inc. v. Sinclair, supra; McCabe v. United Bank of Boulder,* 657 P.2d 976 (Colo. App.1982).

▇ The application of the "maturity exception" in this case turns on whether the claim is one which the claimant could have maintained against Krotiuk on the date he filed his answer in the 1991 action. *See Steinberg v. St. Paul Mercury Insurance,* 108 F.R.D. 355, 358 (S.D.Ga.1985) (a counterclaim acquired by a defendant after he or she has answered will not be considered compulsory, even if it arises out of the same transaction; similarly, a counterclaim which is likely to arise or is contingent when defendant files the answer has not matured for the purposes of Rule 13(a)); *Blaser v. Cameron,* 116 Idaho 453, 776 P.2d 462 (1989).

According to claimant, the exception applies because he accepted the transfer of Krotiuk's limited partnership interests to his wife as full payment for his services before the 1991 lawsuit was filed. While he concedes it was foreseeable that Krotiuk might prevail in the 1991 action and that this would have deprived him of his payment, he insists he had no claim against Krotiuk at the time he filed his answer in the 1991 action. In his

words, the claim "was revived by the trial court's ruling reversing the transactions." *See Steinberg v. St. Paul Mercury Insurance, supra* (a potential claim is not mature). We are not persuaded.

In support of his argument, claimant relies heavily on cases involving claims for contribution, indemnity, malicious prosecution, or attorney fees and costs. However, such claims generally do not accrue until liability has been determined on the underlying claims, and for that reason, have been held not to be compulsory counterclaims in the underlying actions. *See Young v. City of New Orleans,* 751 F.2d 794 (5th Cir.1985)(malicious prosecution claim was not mature because it depended upon the unsuccessful outcome of plaintiff's earlier claim); *Universal Underwriters Insurance Co. v. Security Industries, Inc.,* 391 F.Supp. 326 (W.D.Wash.1974)(claim for attorney fees and investigation costs did not exist until issue of liability was resolved in the earlier case, and therefore was not a compulsory counterclaim).

We also view most, if not all, of the other decisions cited by claimant as distinguishable. For example, in *Steinberg v. St. Paul Mercury Insurance, supra,* an insured sued his insurer for liquidated damages plus attorney fees and costs. When the insurer counterclaimed based on a promissory note and security deed, the insured contended the counterclaim was barred because it was a compulsory counterclaim in an earlier action. The court disagreed, observing that the insurer's answer in the previous case was filed at least three months before the security deed and promissory note had even been assigned to the insurer. The court held that the insurer's claim may have been anticipated, but it had not matured. *See also Blaser v. Cameron, supra* (contractor's claim was not barred as a compulsory counterclaim in an earlier action because contractor did not have a legal basis for his claim until he had completed his promised performance under the contract).

Here, in contrast, claimant admits all of the activities that formed the basis for his personal services claim occurred before Krotiuk's lawsuit was filed in 1991, and before his

answer was due. Even if we accept claimant's premise that he had no basis for initiating an action against Krotiuk because he considered himself fully paid, nevertheless, *at the time his answer was due in the 1991 case,* claimant was fully aware that his entitlement to be paid for those personal services was squarely in issue. According to the pleadings in the 1991 case, Krotiuk maintained that he had stolen her property , and one of his affirmative defenses

Because claimant's entitlement to be paid was placed in issue by Krotiuk's complaint, we conclude that his claim for payment was mature at the time he was required to file his answer, and was therefore a compulsory counterclaim in the 1991 action.

As the trial court in this action observed in 1998 when it granted partial summary judgment for the estate, the same issue of claimant's entitlement to compensation was before the court in 1991. Indeed, it is difficult to read the trial court's finding of fact in 1991—that Krotiuk had received "no consideration" from claimant in exchange for her limited partnership interests—as anything but fatal to claimant's argument that he had given her full value for the partnerships and was entitled to compensation.

In this regard, we note that in the estate's motion for partial summary judgment, it also asserted that the claim was precluded by the doctrines of res judicata and collateral estoppel. However, the trial court granted relief to the estate based on other grounds and the res judicata-collateral estoppel argument has not been pressed on appeal. Hence, we do not address those issues.

In summary, we conclude that claimant's claim for personal services matured in 1991. Because claimant's assertion of entitlement to compensation for personal services was a compulsory counterclaim under C.R.C.P. 13(a) and should have been raised in the 1991 action, the trial court here properly dismissed it and granted partial summary judgment on that basis. We view this holding as consistent with the purpose of the compulsory counterclaim rule, which is to promote justice by avoiding multiple lawsuits between the parties to a transaction or occurrence.

■ In so ruling, we also reject claimant's contention that the trial court's reasoning was inconsistent. Even if such were the case, an appellate court will uphold a decision by the trial court that has reached a correct result, albeit using reasoning different from our own. *See Rosa v. Warner Electrical Contracting,* 870 P.2d 1210 (Colo.1994).

## II.

■■ Claimant next contends the trial court erred in concluding that his claim for return of the rugs, or payment of their value, was barred by the statute of limitations. According to claimant, the statute did not begin to run until he personally demanded the return of the rugs and the demand was refused. He asserts that there is a genuine issue of material fact whether he made such a demand before 1997. *See Schwartz' Estate v. Silvey,* 101 Colo. 336, 73 P.2d 994 (1937); *Westerman v. Rogers, supra.* Again, we disagree.

Actions of replevin or for taking, detaining, or converting goods or chattels must be commenced within three years after the cause of action accrues. Section 13–80–101(1)(h), C.R.S.1999. A cause of action for wrongful possession of personal property, goods, or chattels accrues at the time the wrongful possession is discovered or should have been discovered through reasonable diligence. Section 13–80–108(7), C.R.S.1999.

Here, it is undisputed that some member of the claimant's family demanded the return of the rugs in 1992. According to claimant's response to interrogatories in this action, he made the demand. Although he later qualified his response with affidavits claiming his daughter had asked for the rugs, the daughter's affidavit states that she had made one of her demands for the rugs by telephone while she was visiting claimant. In any event, claimant's family had requested their return in 1992 at the same time they requested the return of several paintings. The paintings were returned but the rugs were not.

Based on these undisputed facts, the trial court found that by the exercise of reasonable diligence, claimant should have discovered the alleged wrongful possession of the

rugs in 1992 when they were not returned with the paintings. Because he did not file the claim for return of the rugs until 1997, two years after the statute of limitations had run, we perceive no error by the trial court in granting partial summary judgment for the estate as to that part of the claim.

Judgment affirmed.

Judge KAPELKE and Judge CASEBOLT concur.